

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 20, 2026**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | **CASE NO. 23-32275** |
| | § | **(CHAPTER 11)** |
| **ROOFING DESIGNS BY JR, LLC,** | § § | |
| Debtor. | § § | |
| | § | |
| | § | |
| **ROOFING DESIGNS BY JR, LLC,** | § § | |
| Plaintiff | § § | **ADVERSARY NO. 24-03079-mvl** |
| | § | |
| v. | § | **Related to ECF No. 48** |
| | § | |
| **BONIFACIO TAPIA DBA MBTL** | § | |
| **ROOFING SPECIALIST, LLC.** | § | |
| Dissolved | § | |
| | § | |
| **BONIFACIO TAPIA DBA BYTL** | § | |
| **ROOFING SOLUTIONS, LLC** | § | |
| **AND KINSALE INSURANCE** | § | |
| **COMPANY,** | § | |
| Defendants. | § | |

1

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

### I.   <u>INTRODUCTION</u>

Before the Court is the *Defendant's Motion to Dismiss Plaintiff's First Amended Adversary Petition* and *Brief in Support*[1] (collectively, the "**Motion**") filed by Kinsale Insurance Company ("**Kinsale**" or the "**Defendant**") on June 2, 2025.[2] Through the Motion, the Defendant seeks to dismiss the *Plaintiff's First Amended Adversary Petition*[3] (the "**Petition**") filed on April 03, 2025 by Roofing Designs by JR, LLC ("**Roofing Designs**" or the "**Plaintiff**").

The Plaintiff's Petition alleges multiple claims, including breach of contract – failure to defend, breach of contract – failure to provide proper defense and negligence, breach of contract – bad faith, violations of the Texas Insurance Code, and equitable subrogation.[4] Following the Motion, the Plaintiff filed a *Response to Defendant Kinsale Insurance Company's Motion to Dismiss First Amended Adversary Petition*[5] on June 4, 2025. Finally, the Defendant filed its *Defendant Kinsale Insurance Company's Reply to Plaintiff's Responses to Kinsale's Motion to Dismiss Plaintiff's First Amended Adversary Petition*[6] on June 12, 2025.

The Court held a hearing on the Motion on September 17, 2025. Counsel for the Plaintiff and the Defendant appeared. After hearing arguments, the Court took the Motion under advisement. The Court has considered the briefing and arguments of counsel and concludes that the Motion should be **GRANTED**. The following constitutes the Court's analysis underlying its ruling.

---

[1] All ECF No. references are herein made with respect to the docket in Adversary Proceeding No. 24-03079-MVL.
[2] ECF No. 48.
[3] ECF No. 37-1.
[4] *Id.*
[5] ECF No. 50.
[6] ECF No. 54.

## II.   JURISDICTION

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a non-core proceeding under 28 U.S.C. § 157(b), but the parties have consented to this Court's authority to enter final orders. The following ruling shall constitute this Court's reasoning pursuant to Rules 8, 9, and 12 of the Federal Rules of Civil Procedure (the "**Rules**"), as made applicable in adversary proceedings pursuant to Rules 7008, 7009 and 7012 of the Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## III.   STANDARD OF REVIEW

Rule 12(b)(6), incorporated by Bankruptcy Rule 7012(b), authorizes dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."[7] In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff.[8] However, the Court need not "strain to find inferences favorable to the plaintiffs."[9]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, state a plausible cause of action.[10] "A claim satisfies the plausibility test when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] This plausibility requirement sits somewhere between possible and probable, and is satisfied where the plaintiff's

---

[7] Fed. R. Civ. P. 12(b)(6).
[8] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)).
[9] *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[11] *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ, 2021 WL 2546664, at *1 (Bankr. N.D. Tex. June 3, 2022) (Jones, J.) (internal quotations omitted).

pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[12]

Although the complaint is not required to provide detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13] However, numerous courts within the Fifth Circuit have reiterated that because "a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted."[14] In reviewing the motion, the court looks to the pleadings, alongside any documents attached or incorporated into the complaint by reference.

As for claims involving actual fraud, Rule 9(b), as incorporated through Bankruptcy Rule 7009, requires a party to "state with particularity the circumstances constituting fraud or mistake."[15] In other words, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how" of the events at issue.[16]

The Court will first summarize the relevant factual background and the insurance policies at issue. The Court will then address each of Roofing Designs' causes of action in turn. As explained below, the Court concludes that: (1) the allegations in the Petition do not plausibly give rise to a duty to defend under the Tapia Policy (as hereinafter defined); (2) Kinsale satisfied its contractual obligations under the Roofing Designs policy; and (3) Roofing Designs' claims for bad faith, statutory violations, and equitable subrogation fail as a matter of law.

## IV.  FACTUAL BACKGROUND

---

[12] *Iqbal*, 556 U.S. at 678.

[13] *Twombly*, 550 U.S. at 555.

[14] *Reagor-Dykes*, 2021 WL 2546664 at *2 (citation omitted).

[15] *In re Cogent Energy Servs., LLC*, No. 23-33659, Adv. No. 23-3212, slip op. at *3 (Bankr. S.D. Tex. Aug. 12, 2024).

[16] *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008).

Taking the allegations in the Petition as true, the following constitutes a summary of the facts necessary to decide Kinsale's Motion to Dismiss.

### A. Royal American Construction Litigation

Roofing Designs served as the roofing subcontractor on a project located at 900 Winston Street in Houston, Texas (the "**Project**").[17] As part of its work, Roofing Designs subcontracted the labor installation of the roofing system to Bonifacio Tapia, operating through BMTL Roofing Specialist, LLC and BYTL Roofing Solutions, LLC (collectively, "**Tapia**").[18] According to Roofing Designs, the subcontract agreement required Tapia to procure commercial general liability insurance naming Roofing Designs as an additional insured, and Tapia obtained that coverage through a policy issued by Kinsale Insurance Company ("**Kinsale**" or the "**Defendant**").[19]

Roofing Designs alleges that in May 2021, the roofing system was substantially complete when the general contractor, Royal American Construction ("**RAC**"), began reporting roof leaks and asserting that the installation was defective.[20] Roofing Designs maintains that these issues stemmed from building-related problems such as plumbing, HVAC, and exterior deficiencies, rather than from any defect in the roofing system.[21] Nevertheless, on June 16, 2021, RAC terminated Roofing Designs and later filed suit in the United States District Court for the Southern District of Texas asserting claims relating to Roofing Designs' performance and its surety (the "**RAC Lawsuit**").[22]

It is against this backdrop that the coverage dispute arose. Roofing Designs alleges that the RAC Lawsuit centered on roofing work performed by Tapia and his crew.[23] On this basis, Roofing

---

[17] ECF No. 37-1, p. 2.
[18] *See id.*
[19] *Id.*
[20] *Id.* at p. 5.
[21] *Id.*
[22] *Id.* at p. 3.
[23] *Id.* at p. 17.

Designs tendered its defense to Kinsale under Tapia's separately issued policy by Kinsale (the "**Tapia Policy**") in February 2023, asserting coverage as an additional insured.[24] According to Roofing Designs, Kinsale denied the tender on the grounds that Tapia and BMTL were not named defendants in the RAC lawsuit.[25] Roofing Designs further alleges that Kinsale conducted no meaningful investigation into Tapia's involvement in the roofing work, failed to contact or interview Tapia, declined to depose him, and disregarded information from roofing inspections that Roofing Designs believed would have supported Roofing Designs' position in the RAC Lawsuit.[26]

Roofing Designs contends that the consequences of Kinsale's denial of coverage under the Tapia Policy were significant.[27] Because Kinsale had already accepted the defense of Roofing Designs under its separate policy with Roofing Designs (the "**Roofing Designs Policy**"), subject to a reservation of rights, Roofing Designs alleges that Kinsale effectively shifted the entire financial burden of defending the RAC Lawsuit onto the Roofing Designs Policy.[28] Roofing Designs asserts that the Tapia Policy carried $1 million in limits that should have been applied to its defense first, and that Kinsale's refusal to allocate or shift defense costs caused Roofing Designs to pay defense expenses that should have been borne under the Tapia Policy.[29] Roofing Designs states that it incurred approximately $43,753.16 in defense fees and expenses, of which Kinsale reimbursed only about $7,000, leaving the remainder improperly charged against the Roofing Designs Policy.[30] Roofing Designs further alleges that Kinsale's refusal to investigate Tapia's work or to pursue contribution, subrogation, or other avenues relating to Tapia's involvement left

---

[24] *Id.* at p. 6.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 13.
[28] *Id.* at pp. 14–15.
[29] *Id.* at pp. 2, 14.
[30] *Id.* at p. 14.

Roofing Designs exposed to litigation costs and liability that the Tapia Policy was intended to address.[31]

These events, Roofing Designs asserts, contributed to cascading financial consequences, including the loss of bonding capacity, business relationships, and the ability to obtain affordable liability insurance.[32] Roofing Designs goes so far as to attribute its eventual Chapter 11 filing to the litigation burdens and coverage decisions made by Kinsale during the RAC lawsuit.[33]

Kinsale continued to provide a defense under the Roofing Designs Policy through the conclusion of the RAC lawsuit and ultimately settled RAC's claims on Roofing Designs' behalf; the district court then dismissed the RAC Lawsuit with prejudice.[34] Roofing Designs subsequently initiated this adversary proceeding, asserting claims for breach of contract for failure to defend under the Tapia Policy, breach of contract and negligence relating to the defense provided under the Roofing Designs Policy, bad faith, and violations of the Texas Insurance Code, along with requests for declaratory relief concerning its additional-insured status and the allocation of defense costs.[35] Kinsale now seeks dismissal of all claims under Rule 12(b)(6).[36]

At the core of the dispute is whether Roofing Designs should have been afforded coverage under the Tapia Policy as an additional insured and whether Kinsale should have done more to defend Roofing Designs under the Roofing Designs Policy. Neither of which were attached to the Petition.

Under established Fifth Circuit precedent, when ruling on a 12(b)(6) motion, a court's review is generally limited to the complaint, its attachments, and documents that are (1) referred

---

[31] *Id.* at pp. 14–17.
[32] *Id.* at p. 18.
[33] *Id.*
[34] ECF No. 49, p. 3.
[35] *See generally* ECF No. 37-1.
[36] ECF No. 48.

to in the complaint and (2) central to the plaintiff's claims.[37] A document is "central" when the claim's viability depends on its contents, such that the plaintiff could not pursue the claim without it.[38] If the document is not integral to the pleading, the court may not consider it without converting the motion into one for summary judgment.[39]

Roofing Designs' references throughout its Petition numerous times (1) the Tapia Policy,[40] (2) the Roofing Designs Policy,[41] and (3) the RAC Lawsuit and the underlying complaint therein (the "**RAC Complaint**").[42] These documents are integral to Roofing Designs' various counts alleged in its Petition. The Court therefore finds that each of the aforementioned documents are referred to and central to Roofing Designs' Petition. Consistent with the Fifth Circuit's holdings in *Lone Star Fund* and *Collins*, the Court will consider the Tapia Policy, the Roofing Designs Policy, and the RAC Complaint to evaluate each count for purposes of the Motion.

### B. The Causes of Action

Although difficult to discern, the Court finds that Roofing Designs Petition pleads five causes of action against Kinsale: (1) breach of contract under the Tapia Policy for failure to defend Roofing Designs as an alleged additional insured; (2) breach of contract and negligent claims handling under the Roofing Designs Policy based on Kinsale's conduct of the defense in the RAC Litigation; (3) breach of the duty of good faith and fair dealing; (4) violations of Chapters 541 and 542 of the Texas Insurance Code; and (5) a request for declaratory relief concerning its purported

---

[37] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[38] *Gore v. Cedar Hill Indep. Sch. Dist.*, No. 3:15-cv-3963-M-BN, 2016 LX 119002, at *9 (N.D. Tex. July 26, 2016) (citing *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)).

[39] *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536–39 (5th Cir. 2003).

[40] *See generally* ECF No. 37-1.

[41] *See generally id.*

[42] Roofing Designs refers to the underlying RAC Lawsuit and its contents numerous times throughout its Petition. *See id.*, pp. 6, 14, 16, 18–19, & 20.

8

rights under both Policies.[43] Kinsale, in turn, argues in its Motion that each cause of action fails as a matter of law. Kinsale argues that: (1) The pleadings do not plausibly allege a duty to defend or indemnify under the Tapia Policy because no liability arising from Tapia's conduct was alleged by RAC in the RAC Lawsuit. (2) Texas law does not recognize a negligent-defense theory, and the Petition identifies no breached obligation under the Roofing Designs Policy. (3) The absence of coverage forecloses any bad-faith or statutory liability. (4) The declaratory judgment claim is duplicative of the underlying contractual and extra-contractual claims.

## V.   LEGAL ANALYSIS

To resolve Kinsale's Motion, the Court begins with the threshold coverage question: whether Kinsale owed Roofing Designs a duty to defend or indemnify under either the Tapia Policy or the Roofing Designs Policy. In Texas, insurance policies are interpreted utilizing the same rules that govern contracts generally, with the primary objective of giving effect to the parties' intent as expressed in the policy language.[44] The insured bears the burden to establish coverage under the policy, while the insurer bears the burden to establish the applicability of exclusions.[45]

Texas law distinguishes between the duty to defend and the duty to indemnify.[46] The duty to defend is "distinct from, and broader than," the duty to indemnify.[47] The duty to defend is determined under the "eight-corners rule," which requires the Court to compare the allegations in the underlying complaint with the language of the policy.[48] If the facts alleged in the underlying complaint potentially fall within the policy's coverage, the insurer has a duty to defend; if they do not, no such duty arises.[49] In reviewing the underlying pleadings, courts focus on the factual

---

[43] ECF No. 37-1.
[44] *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).
[45] *Id.* at 124.
[46] *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008).
[47] *Id.*
[48] *King v. Dallas Fire Ins.Co.*, 85 S.W.3d 185, 187 (Tex. 2002).
[49] *Id.*

allegations that show the origin of the claimed damages rather than the legal theories asserted.[50]

Although doubts are resolved in the insured's favor,[51] courts will not read facts into a petition or

imagine factual scenarios that might trigger coverage.[52]

The duty to indemnify, by contrast, turns on the facts actually established in the underlying

suit.[53] Ordinarily it is determined after the underlying litigation concludes; however, when the

pleadings and the posture of the underlying action foreclose any possibility of covered liability,

the indemnity issue may be resolved as a matter of law.[54]

Applying these principles, the Court first addresses coverage under the Tapia Policy. Before

any duty to defend or indemnify can arise under that policy, Roofing Designs must qualify as an

"additional insured"[55] within the scope of the Tapia Policy's "Additional Insured" endorsement.

This endorsement amends "Who Is an Insured" to include any person or organization that is

required to be included by written contract, "but only for *vicarious liability* imposed on the

Additional Insured" that is "caused by *the sole* negligent conduct of the Named Insured and

proximately caused by" the Named Insured's work or product.[56] The endorsement therefore

imposes a two-part inquiry: a written contract requirement and a further requirement that the

---

[50] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).
[51] *Liberty Mut. Fire Ins. Co. v. Copart of Connecticut, Inc.*, 75 F.4th 522, 528–29 (5th Cir. 2023).
[52] *Swinerton Builders v. Zurich Am. Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (quoting *Guar. Nat'l Ins. Co. v. Azrock Indus.*, 211 F.3d 239, 243 (5th Cir. 2000)).
[53] *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) (citing *Am. Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.—Dallas 1990)).
[54] *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex 1997) ("[T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.").
[55] *W. Indem. Ins. Co. v. Am. Physicians Ins. Exch.*, 950 S.W.2d 185, 188 (Tex. App.—Austin July 24, 2997) ("An additional insured is a party protected under an insurance policy, but who is not named within the policy. A common example of an additional insured is a person who, although not specifically named, is covered under a liability policy by a definition of 'insured' that extends protection to interests, strictly according to a status.")
[56] ECF No. 49-5, p. 70 (emphasis added).

underlying allegations impose vicarious liability on the additional insured for the named insured's sole negligence arising out of the named insured's work.[57]

Here, even accepting as true Roofing Designs' allegation that Tapia was required by subcontract to name Roofing Designs as an additional insured,[58] the analysis does not end there. The mere existence of an additional insured endorsement does not create an unequivocal duty to defend the additional insured in all cases. In order for the additional insured endorsement under the Tapia Policy to trigger a duty to defend Roofing Designs under the Tapia Policy, the underlying complaint in the RAC Lawsuit must have alleged *vicarious liability* against Roofing Designs caused by Tapia's *sole* negligence.[59] Under the eight-corners rule, the Court confines its analysis to the RAC Complaint and the Tapia Policy. Roofing Designs' reliance on factual allegations in the Petition of this adversary proceeding or other material outside the RAC Complaint is therefore misplaced; extrinsic facts cannot create a duty to defend where none is triggered by the underlying pleading.

The RAC Complaint asserted facts and claims *only* against Roofing Designs. The RAC Complaint alleged that Roofing Designs engaged in negligent conduct, including deficient work, improper handling of materials, damage to property outside the scope of work, and negligent supervision and selection of subcontractors. Notably, the RAC Complaint contains no allegations that Roofing Designs was vicariously liable for Tapia's sole negligence.[60] Because the RAC Complaint contained no allegations of negligence against Tapia and no allegations that Roofing Designs' liability was vicarious and caused solely by Tapia's negligence, Roofing Designs did not

---

[57] *See id.*
[58] ECF No. 37-1, p. 25.
[59] ECF No. 49-5, p. 70.
[60] In fact, there is not a single mention of Tapia in the RAC Complaint. *See generally* ECF No. 49-3.

qualify as an additional insured for purposes of the RAC Lawsuit. Thus, Kinsale owed no duty to defend Roofing Designs under the Tapia Policy as a matter of law.

For similar reasons, Roofing Designs has not plausibly alleged any duty to indemnify under the Tapia Policy. As previously discussed, coverage under the Tapia Policy's additional insured endorsement is limited to vicarious liability arising from Tapia's sole negligence. Roofing Designs does not allege facts establishing that any settlement or judgment imposed liability on Roofing Designs *solely* due to Tapia's negligence.

The Roofing Designs Policy presents a different posture. Kinsale defended Roofing Designs in the RAC Lawsuit under the Roofing Designs Policy and resolved RAC's claims against Roofing Designs through settlement. Accordingly, the remaining issues are not whether Kinsale owed a defense under the Roofing Designs Policy, but whether Roofing Designs has plausibly alleged a breach of any contractual or statutory duty based on Kinsale's denial of Tapia Policy coverage or based on litigation strategies such as the pursuit of Roofing Designs' counterclaims or third-party actions.

Finally, it cannot be ignored that in opposing dismissal, Roofing Designs relies in part on authorities that are not verifiable or are plainly inapplicable.[61] The Court does not consider citations to non-existent opinions or authorities that cannot be substantiated.[62] With these standards and limitations in mind, the Court addresses each cause of action in turn.

### A. Breach of Contract – Failure to Defend

Roofing Designs first alleges that Kinsale breached the Tapia Policy by refusing to defend it as an additional insured in the RAC Lawsuit.[63] Under Texas law, a breach of contract claim

---

[61] ECF No. 54, pp. 2–3.
[62] To be sure, the deficient citations may be sanctionable under Rule 9011 of the Federal Rules of Bankruptcy Procedure.
[63] ECF No. 37-1, pp. 13–14.

requires the plaintiff to establish four elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) the other party breached by failing to perform as contractually required; and (4) the claimant was damaged as a result of the breach.[64]

In its Petition, Roofing Designs alleges the existence of a valid contract in stating that "Kinsale issued a liability insurance policy to Tapia with endorsements that explicitly named Roofing Designs as an additional insured."[65] Roofing Designs further alleges that it tendered performance to Kinsale by submitting a claim to Kinsale under the Tapia Policy.[66] Additionally, Roofing Designs recounts a slew of damages that occurred as a result of Kinsale's alleged breach of the Tapia Policy.[67] Ultimately, whether Roofing Designs states a plausible claim that Kinsale breached the Tapia Policy depends on whether the Tapia Policy provided coverage for the claims made against it by Roofing Designs. To do so, Roofing Designs must first plausibly allege that the claims made by RAC against Roofing Designs in the RAC Complaint qualified Roofing Designs as an "additional insured" under the Tapia Policy such that Roofing Designs should have been afforded coverage under that Policy.

As explained in the Court's coverage analysis above, before any duty to defend or indemnify can arise under an insurance policy, the party seeking coverage must qualify as an insured within the scope of that policy. Applying the eight-corners rule to the Tapia Policy, Roofing Designs did not qualify as an additional insured for purposes of the RAC Lawsuit because the RAC Complaint did not contain allegations that Roofing Designs' liability arose solely from

---

[64] *Coim USA Inc. v. Sjobrand Inc.*, 663 F. Supp. 3d 684, 687–88 (N.D. Tex. 2023).
[65] ECF No. 37-1, p. 14.
[66] *Id.* at p. 6.
[67] *Id.* at pp. 2–6, 13–19.

Tapia's negligence. Absent insured status, Kinsale owed no duty to defend Roofing Designs under the Tapia Policy.

Roofing Designs' breach-of-contract claim in Count I therefore fails to the extent it is premised on an alleged failure to defend under the Tapia Policy. The allegations in the Petition do not plausibly state that Kinsale breached any contractual obligation by declining to provide a defense where the policy's additional insured endorsement was not triggered by the allegations in the RAC Lawsuit.

To the extent that Count I purports to assert a present claim for indemnity under the Tapia Policy, that claim likewise fails. As discussed above, under Texas law the duty to indemnify is narrower than, and distinct from, the duty to defend and generally depends on the actual facts established in the underlying litigation.[68] Here, Roofing Designs has not pleaded facts demonstrating that it was vicariously liable for Tapia's sole negligent acts, and the underlying RAC Lawsuit has been resolved and dismissed with prejudice. Where, as here, the same reasons that negate the duty to defend also negate any potential for coverage, dismissal of an indemnity claim at the pleadings stage is appropriate.[69]

Accordingly, Count I fails to state a claim for which relief can be granted for breach of contract based on either a failure to defend or failure to indemnify under the Tapia Policy and is dismissed.

### B. Breach of Contract – Failure to Provide Proper Defense and Negligence

The Court next addresses Roofing Designs' challenge to the manner in which Kinsale conducted the defense under its own Roofing Designs Policy. Roofing Designs alleges that Kinsale breached the policy by failing to provide a "proper defense" and by acting negligently in the

---

[68] *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91 (Tex. 2008).
[69] *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 85 (Tex. 1997).

conduct of that defense.[70] Specifically, Roofing Designs contends that it incurred legal fees in prosecuting a crossclaim against RAC and that Kinsale breached the Roofing Designs Policy by refusing to file or authorize a third-party action against Tapia.[71] Even accepting these allegations as true, Count II fails to state a viable action under Texas law.

As explained in the Court's coverage analysis, Kinsale accepted the tender of defense under the Roofing Designs Policy, provided a defense, and resolved the underlying RAC Lawsuit through settlement.[72] The dispute in Count II therefore does not concern the existence of a defense obligation, but whether the duty to defend required Kinsale to pursue affirmative litigation requested by Roofing Designs or to conduct the defense in a particular manner. Texas law imposes no such obligations on insurers.

Neither the Roofing Designs Policy nor the Tapia Policy obligates Kinsale to prosecute counterclaims or third-party claims on Roofing Designs' behalf.[73] Both Policies provide coverage only for sums the insured becomes legally liable to pay *as damages* because of covered property damage caused by an occurrence. Claims asserted by Roofing Designs against third-parties—whether as counterclaims against RAC or third-party claims against Tapia—*seek affirmative recovery* rather than a defense against liability and therefore fall outside the scope of the Policies' grants of coverage. Accordingly, the Policies do not impose a contractual duty on Kinsale to file, fund, or authorize the prosecution of such offensive claims.

Courts applying Texas law have consistently confirmed that an insurer's duty to defend does not include an obligation to pay for or pursue affirmative claims. In *Vansteen Marine Supply, Inc. v. Twin City Fire Ins. Co.*, the court held that the duty to defend does not extend to the

---

[70] ECF No. 37-1, pp. 19–20.
[71] *See id.*; *see also* 37-37.
[72] *Id.* at 14; *see also* ECF No. 49, p. 12.
[73] ECF No. 49, Exh. D, p. 5; Exh G., p. 6.

prosecution of independent and purely offensive counter claims.[74] The Fifth Circuit has likewise observed that "[n]o Texas court has ever held that the duty to defend includes the duty to pay legal fees incurred in the course of prosecuting affirmative claims that are inextricably intertwined with the defense."[75] In response to the Motion, Roofing Designs simply provides conclusory statements that it was entitled to coverage.[76] These conclusory statements are insufficient to plausibly allege a cause of action for breach of contract. Thus, Roofing Designs' allegation that Kinsale failed to provide a proper defense under the Roofing Designs policy is improper.

Recasting these allegations as "negligence" does not salvage Count II. The Fifth Circuit has made clear that Texas law does not recognize a cause of action for negligent claims handling or negligent defense strategy in the third-party liability context.[77] Allegations concerning what discovery was pursued, what litigation strategies were employed, or what claims were asserted reflect dissatisfaction with defense tactics, not breach of any contractual duty imposed by the subject policy.

Accordingly, because Texas law does not require an insurer to prosecute affirmative claims or conduct the defense in accordance with the insured's preferred strategy, and because Roofing Designs has not alleged the breach of any contractual duty recognized by the Roofing Designs Policy, Count II fails to state a claim upon which relief can be granted and is dismissed.

### C. Breach of Contract – Bad Faith

---

[74] No. 13-05-00231-CV, 2008 WL 599850, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 6, 2008) (finding that the duty to defend does not obligate an insurer to pay for or prosecute purely offensive counterclaims).

[75] *Aldous v. Darwin Nat'l Assur. Co.*, 851 F.3d 473, 483 (5th Cir. 2017) ("The duty to defend the entire suit does not give rise to a duty to prosecute claims helpful to or even inextricably intertwined with that defense, however.").

[76] "The amended complaint… show[s] the claims in the underlying suit arose from Tapia's operations—triggering Kinsale's duty under the Additional Insured Endorsement." ECF No. 50, p. 4.

[77] *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 522 (5th Cir. 2013) ("[N]o Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim, in the first-party context, let alone in the third-party claim context.").

The Court next addresses Roofing Designs' claim styled as "breach of contract—bad faith," which is premised on Kinsale's denial of coverage under the Tapia Policy. As pleaded, Count III fails to state a viable cause of action under Texas law.

As an initial matter, Texas law does not recognize a standalone cause of action for "breach of contract—bad faith." Roofing Designs cites no authority supporting such a claim, and the Court's research uncovered none. To the extent Count III is asserted as a distinct breach of contract claim separate from the alleged failure to defend or indemnify, it is not a cognizable cause of action and is subject to dismissal on that basis alone.

Construed liberally, the allegations in Count III appear to assert a claim for common-law bad faith based on the theory that Kinsale improperly favored Tapia over Roofing Designs in its coverage determinations. The pleaded facts, however, do not plausibly support that theory. The RAC Complaint did not name Tapia as a defendant, and Roofing Designs does not allege that Tapia requested or received a defense under the Tapia Policy in connection with the RAC Lawsuit. Nor were Roofing Designs and Tapia similarly situated insured with respect to the allegations asserted in the RAC Lawsuit. The RAC Complaint asserted claims solely against Roofing Designs based on Roofing Designs' own alleged conduct and did not assert any claims that would have triggered additional insured coverage or imposed vicarious liability on Roofing Designs for Tapia's acts. Accordingly, the allegation that Kinsale treated similarly situated insureds disparately is not plausible.

Roofing Designs' reliance on *Zurich American Insurance Co. v. Nokia, Inc.* does not alter this conclusion. [78] *Nokia* addressed an insurer's duty to defend where the underlying pleading alleged facts supporting both covered and non-covered claims, holding that the insurer must defend

---

[78] *Zurich American Insurance Co. v. Nokia, Inc.*, 268 S.W.3d 487 (Tex. 2008).

the entire suit in that circumstance.[79] Here, by contrast, the RAC Complaint did not allege facts that would support covered or potentially covered claims against Roofing Designs *under the Tapia Policy*. Where the pleadings do not trigger coverage, *Nokia* confirms that no duty to defend arises and provides no support for a bad faith claim.[80]

Roofing Designs likewise misapplies *Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*[81] *Evanston* involved materially different policy language and factual circumstances, including coverage issued to insure contractual indemnity obligations.[82] In this case, the Tapia Policy and the Roofing Designs Policy provided different coverage to different insureds under separate insuring agreements. Roofing Designs' status under the Tapia Policy was limited to additional-insured coverage for vicarious liability arising from Tapia's sole negligence, while the Roofing Designs Policy provided coverage for Roofing Designs' own potential liability. Because the RAC Complaint did not allege facts triggering additional-insured coverage under the Tapia Policy, *Evanston* does not support Roofing Designs' contention that Kinsale acted in bad faith by declining coverage under that policy.

Finally, as explained above, Kinsale did not breach any contractual duty to Roofing Designs. Kinsale owed no duty to defend or indemnify under the Tapia Policy and provided a defense under the Roofing Designs Policy. Absent a breach of contract or a wrongful denial of coverage, there can be no viable claim for common-law bad faith. Count III therefore fails to state a claim upon which relief can be granted and is dismissed.

### D.  Breach of Contract – Claims of Unfair Claim Practices and Violations of the Texas Insurance Code

---

[79] *Id.* at 489.
[80] *Id.* at 490–91.
[81] *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008).
[82] *Id.* at 662.

Roofing Designs asserts statutory claims under the Texas Insurance Code based on the same alleged denial of coverage and claims-handling conduct addressed in the preceding counts. Specifically, Roofing Designs cites sections 541.060 and 542.003 of the Texas Insurance Code in connection with Kinsale's handling of the tender under the Tapia Policy.[83] Even accepting Roofing Designs' factual allegations as true, Count IV fails to state a viable cause of action under Texas law.

As an initial matter, Roofing Designs' claim under Texas Insurance Code § 542.003 fails as a matter of law because Chapter 542.001 *et seq.* does not create a private cause of action. Courts applying Texas law have consistently held that § 542.003 is enforceable only by the State of Texas and does not give rise to a private right of action.[84] Accordingly, Roofing Designs' claim premised on an alleged violation of § 542.003 must be dismissed.

Roofing Designs also alleges violations of Texas Insurance Code § 541.060(a). Claims alleging violations of the Texas Insurance Code are subject to the heightened pleading requirements of Rule 9(b).[85] To satisfy Rule 9(b), a plaintiff must plead with particularity the "who, what, when, where, and how" of the alleged misconduct.[86] Roofing Designs has not done so here. Its allegations are generalized and conclusory and do not identify with particularity any misrepresentation, delay, or unfair settlement practice attributable to Kinsale. On this basis alone, Roofing Designs' § 541.060 claims fail.

Even if Roofing Designs had pleaded its statutory claims with the requisite particularity, the factual allegations do not plausibly support a violation of § 541.060(a)(1), (2), or (7). Roofing

---

[83] TEX. INS. CODE ANN. § 541.060; § 542.003.

[84] *Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 280 (Tex. App.—Fort Worth 2018, no pet.); *First Am. Title Ins. Co. v. Patriot Bank*, No. 01-14-00170-CV, 2015 WL 2228549, at *7 (Tex. App.—Houston [1st Dist.] May 12, 2015); *Altecor v. United Prop. & Cas. Ins. Co.*, No. 13-20-00148-CV, 2022 Tex. App. LEXIS 1268, at *13 (Tex. App.—Corpus Christi Feb. 24, 2022).

[85] *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998).

[86] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

Designs does not plead facts demonstrating that Kinsale misrepresented a material fact or policy provision relating to coverage. The exhibits attached to the Petition show that after Roofing Designs tendered its defense under the Tapia Policy on February 17, 2023, Kinsale issued a written denial letter on March 21, 2023, explaining that there was no coverage for Roofing Designs as an additional insured because the Tapia Policy afforded coverage only for liability arising solely from Tapia's own negligence.[87] That explanation accurately reflected Kinsale's coverage position and does not constitute a misrepresentation of policy terms.

Nor has Roofing Designs pleaded facts demonstrating that Kinsale failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under the Roofing Designs Policy for which Kinsale's liability had become reasonably clear. As discussed above, Kinsale had no liability to Roofing Designs under the Tapia Policy because the RAC Complaint did not allege facts triggering additional-insured coverage. Where no coverage obligation exists, an insurer cannot be liable for failing to settle a claim. Moreover, Roofing Designs' own exhibits demonstrate that Kinsale provided a defense to Roofing Designs under the Roofing Designs' Policy and ultimately settled the RAC Lawsuit, obtaining a dismissal with prejudice of all claims against Roofing Designs.

Roofing Designs likewise fails to allege facts showing that Kinsale refused to pay a claim without conducting a reasonable investigation. The materials attached to the Petition demonstrate that Kinsale timely evaluated Roofing Designs tender and issued its coverage position within the time permitted by the Texas Insurance Code.[88] Kinsale's denial letter provided a detailed explanation of the basis for its determination that no duty to defend or indemnify existed under the Tapia Policy. These facts do not plausibly support a claim for unreasonable investigation or delay.

---

[87] ECF No. 37-1, Exh. 29.
[88] *See* TEX. INS. CODE ANN. § 542.051.

Finally, Roofing Designs' allegations that Kinsale failed to pursue claims against Tapia or to allocate liability to Tapia do not state a violation of the Texas Insurance Code. As discussed in connection with Counts I and II, the duty to defend and the duty to indemnify are distinct obligations, and an insurer's duty to defend extends only to lawsuits alleging damages potentially covered by the policy.[89] Where, as here, Roofing Designs did not qualify as an additional insured under the Tapia Policy because the RAC Complaint did not allege liability arising solely from Tapia's negligence, Kinsale had no duty to defend Roofing Designs under that policy and no obligation to pursue litigation strategies designed to *create* coverage.

Roofing Designs' reliance on *Crownover v. Mid-Continent Cas. Co.*, does not alter this conclusion.[90] *Crownover* addressed coverage issues after liability had been established and rejected an insurer's reliance on a contractual-liability exclusion. This case presents materially different circumstances. Here, Kinsale defended Roofing Designs under the Roofing Designs Policy, resolved the underlying litigation by settlement, and correctly determined—based on the allegations in the RAC Lawsuit and policy language—that no duty to defend or indemnify existed under the Tapia Policy. Kinsale did not rely on extrinsic evidence or narrowly construe exclusions to avoid coverage.

Accordingly, because (a) § 542.003 does not provide a private cause of action, (b) Roofing Designs failed to plead § 541.060 claims with particularity, and (c) the pleaded facts demonstrate that Kinsale acted consistently with Texas law and the terms of the Policies, Count IV fails to state a claim upon which relief can be granted and is dismissed.

### E.  Equitable Subrogation

---

[89] *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–44 (Tex. 2009); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91 (Tex. 2008).
[90] *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197 (5th Cir. 2014).

Finally, the Court addresses Roofing Designs' claim for equitable subrogation. Roofing Designs alleges that it is entitled to recover defense costs and other amounts from Kinsale because Kinsale allegedly failed to uphold its contractual obligations and it seeks reimbursement of defense expenses and a transfer of payments made under the Roofing Designs Policy to the Tapia Policy. As discussed below, the Court finds that Count V, as pleaded, fails to state a plausible claim for equitable subrogation and must be dismissed.

Texas law recognizes two forms of subrogation: (1) contractual subrogation and (2) equitable subrogation.[91] Roofing Designs does not identify any contract granting it a right of subrogation against either Kinsale or Tapia. Accordingly, contractual subrogation does not apply.

Nor has Roofing Designs stated a viable claim for equitable subrogation. Equitable subrogation arises by operation of law to prevent injustice and is available only when one party, acting involuntarily, has paid a debt for which another party was primarily liable, such that allowing the primary obligor to avoid payment would result in unjust enrichment.[92] To state such a claim, Roofing Designs must plausibly allege that it involuntarily discharged a debt primarily owed by another party and that the circumstances warrant equitable relief.[93]

Roofing Designs does not plead facts demonstrating that it paid any debt for which either Tapia or Kinsale was primarily liable.[94] Instead, Roofing Designs alleges that it was wrongfully accused of defective construction and that any defects were the responsibility of Tapia.[95] Even

---

[91] *See Interfirst Bank Dallas, N.A. v. United States Fid. & Guar. Co.*, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied).

[92] *Id.*

[93] *See id.*

[94] Roofing Designs merely provides conclusory statements that it is "entitled to recover from Kinsale the defense costs incurred due to Kinsale's failure to uphold its contractual duty." ECF No. 37-1, p. 25. However, as discussed thoroughly, Kinsale honored its contractual obligations under the Roofing Designs Policy to defend Roofing Designs in the RAC Lawsuit. Likewise, Roofing Designs was not entitled to coverage under the Tapia Policy for its claims made related to the RAC Lawsuit.

[95] ECF No. 37-1, pp. 20–22.

accepting those allegations as true, they describe a potential contractual dispute between Roofing Designs and Tapia rather than a basis for equitable subrogation. Further, the expenses Roofing Designs alleges it incurred were costs associated with pursuing affirmative counterclaims against RAC, which were incurred for Roofing Designs' own benefit, not to discharge a debt owed by another. These allegations do not plausibly support an inference that Roofing Designs involuntarily paid a debt primarily owed by another party.

Because Roofing Designs has not pleaded plausible facts showing that it discharged a debt for which another party was primarily liable or that equity favors shifting responsibility to Kinsale, Count V fails to state a claim for equitable subrogation and is dismissed.

To the extent Roofing Designs also seeks declaratory relief regarding Kinsale's coverage obligations under the Tapia Policy or the Roofing Designs Policy, that request is duplicative of the substantive claims already addressed. Having concluded that Kinsale owed no duty to defend or indemnify under the Tapia Policy and that Kinsale satisfied its obligations under the Roofing Designs Policy, the Court finds that declaratory relief does not provide an independent basis for recovery and is likewise dismissed.

## VI.   CONCLUSION

For the reasons set forth above, the Court concludes that Roofing Designs has failed to state a claim upon which relief can be granted. The allegations in the underlying RAC Lawsuit, when compared to the relevant policy language under the eight-corners rule, did not trigger coverage for Roofing Designs as an additional insured under the Tapia Policy. Because Roofing Designs did not qualify as an insured under that policy, Kinsale owed no duty to indemnify Roofing Designs in connection with the RAC Lawsuit. The absence of coverage under the Tapia Policy is

dispositive of Roofing Designs' breach-of-contract claims premised on an alleged failure to defend or indemnify it under the policy.

The Court further concludes that Roofing Designs' remaining causes of action are either not cognizable under Texas law or are derivative of the alleged coverage obligations under the Tapia Policy and therefore fail for the same reasons. Texas law does not recognize a claim for breach of contract based on alleged deficiencies in litigation strategy, the failure to pursue affirmative claims, or negligent claims handling in the third-party liability context. Nor does Texas law permit recovery for common-law or statutory bad faith in the absence of a breach of contract or wrongful denial of coverage. Roofing Designs' statutory claims under the Texas Insurance Code likewise fail because certain provisions do not provide a private cause of action, because the remaining claims are not pleaded with the particularity required by Rule 9(b), and because the pleaded facts demonstrate that Kinsale acted consistently with the policy terms and Texas law.

Finally, Roofing Designs has not pleaded facts sufficient to support a claim for equitable subrogation. The Petition does not allege that Roofing Designs involuntarily paid a debt for which another party was primarily liable, nor do the alleged defense costs or settlement payments support the equitable relief sought. Roofing Designs' requests for declaratory relief is duplicative of its substantive claims and does not provide an independent basis for recovery.

Roofing Designs has already been afforded an opportunity to amend its pleadings in the face of a fully briefed prior motion to dismiss, and has failed to cure the deficiencies identified, the majority of which were outlined in Kinsale's original motion to dismiss. Roofing Designs did not file a motion requesting leave to further amend its Petition. Because the defects in the operative pleading are legal in nature and cannot be remedied through further amendment, the Court concludes that granting additional leave to amend would be futile.

24

Accordingly, Kinsale's Motion to Dismiss is **GRANTED**, and all claims asserted by Roofing Designs in its Petition are **DISMISSED WITH PREJUDICE**. All relief not expressly granted herein is denied.

**# # # End of Order # # #**